CLOTILDE SANTIAGO RIVERA, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent.

No. 108. Argued July 13, 1948.—Decided November 3, 1948.

*Córdova & González* for petitioner. *Luis Negrón Fernández, Attorney General*; and *M. A. García del Rosario,* Attorney for the Tax Division, for intervener, Treasurer of Puerto Rico, respondent in the main action.

Mr. Acting Chief Justice De Jesús delivered the opinion of the Court.

ON RECONSIDERATION [1]

The petitioner and Cecilia Emanuelli contracted marriage in Coamo, Puerto Rico on April 25, 1908 under the system of conjugal partnership. Both brought separate property. On December 4, 1943 she died in her domicile in New York, under an open will of January 9, 1941, amended by a codicil of November 7 of the same year. Both documents were executed in that city. The testatrix made several specific legacies and having no ascendants or descendants she instituted the petitioner as her sole and universal heir.

On April 13, 1944 the petitioner filed in the Treasury Department of Puerto Rico the death certificate of his wife in order to liquidate and pay the inheritance tax. Together with the certificate he filed a report of all their property, separate as well as conjugal. He stated that the total value of the property amounted to $409,641.07;[2] that out of this amount, $117,727.03 [3] belonged separately to the petitioner; that $54,398.05 was the value of the paraphernal property; that the debts of the conjugal partnership amounted to $7,457.80.[4]

The Treasurer accepted the amount fixed by the petitioner as the value of the paraphernal property; but he did not accept, in whole nor in part, the amount he claimed as his separate property and notified him that the inheritance tax amounted to $30,474.58 out of which $13,635.41 should

[1] By judgment of March 31, 1948 this Court affirmed the decision rendered by the Tax Court of Puerto Rico, but on motion for reconsideration our judgment was set aside and we heard the parties again.

[2] This amount, because of certain increases and adjustment of interest, was raised by the Treasurer to $506,079.26, which was accepted by the petitioner.

[3] The amount claimed was $117,727.03 but petitioner himself agrees that $111,794.08 was the value actually proven by him.

[4] The amount originally claimed for debts was reduced by the Treasurer to $4,416.40 and the petitioner consented.

be paid by eight legatees and $16,839.17 by the petitioner. Feeling aggrieved by this decision petitioner sought the reconsideration thereof and an administrative hearing which was held on April 17, 1945. The Treasurer ratified his previous decision. Thereupon the petitioner paid that part of the tax pertaining to the legatees and as to his own he paid $9,730.13, which was, in his opinion, what he was bound to pay. As to the other $7,109.04 he appealed to the Tax Court. He alleged that no inheritance tax could be imposed on the following property because it belonged exclusively to him: (a) his paternal inheritance; (b) the money he invested in the partnership Santiago Hermanos; (c) the proportionate part of his benefit in said partnership; (d) the inheritance which he received from his brother Florencio Santiago Rivera and (e) that received from his sister Teresa Santiago Rivera. All of this separate property, in his opinion, mounted up to $111,794.08.

The Tax Court rendered a decision on July 19, 1946 as follows: (a) upholding the appraisal made by the Treasurer of the real property inherited situated within the jurisdiction of Coamo, Ponce and Santa Isabel, which appraisal was accepted by the petitioner; (b) granting the complaint as to the amount of $32,392.52 which the petitioner received from the United States Government as compensation for the condemnation of the farm "El Húcar"; (c) dismissing the claim for the money invested in the partnership Santiago Hermanos; (d) granting the amount of $9,623.33 out of the $14,378.40 claimed for cattle, and denying the complaint as regard the $35,093.21 accruing from the inheritance of petitioner's father; (e) dismissing petitioner's claim to the effect that $33,949.03 from the whole estate classified by the Treasurer as conjugal, were, at the death of his wife, the separate property of the petitioner; and (f) granting the claim as to the inheritance from his sister Teresa only in the amount of $1,407.14.

Pursuant to this decision the Treasurer filed the compu-

tation of the amount of the inheritance tax that petitioner had to pay, that is, $4,656.62 in addition to the $9,730.13 which he had voluntarily paid before appealing to the Tax Court of Puerto Rico. On September 16, 1946 he paid under protest the $4,656.62 and two days later he filed the petition for certiorari now before us.

Petitioner contends that since he brought to his marriage separate property amounting to $111,794.08, this amount should, after deducting the debts, be subtracted from the inventoried capital inasmuch as it is not subject to the inheritance tax; that the Tax Court also erred in requiring him to identify among all the property inventoried those which he brought or were substituted in their place.

It is evident that § 1307 of the Civil Code which provides that all the property of the marriage shall be considered as community property until it is proven that it belongs exclusively to the husband or to the wife, is the cornerstone of all lawsuits where the separate or conjugal character of the property is in issue. In the present case, however, we cannot avail ourselves of this presumption simply because, as the legal maxim says, presumption yields to the truth, that is, to the proof, and the documentary evidence presented by the petitioner, as we shall presently see, shows that the capital which he claims as separate, emanates from the inheritance of his father and of his brother and sister, Florencio and Teresa, and from the money invested by him in the Santiago Hermanos partnership, plus a share [5] in the profits yielded by said partnership before he contracted marriage. He further proved that all this property was brought by him to the marriage and that its total value is $111,794.08. It was shown that the property was of a separate character because, as to the property obtained by inher-

---

[5] This partnership was organized by deed of July 28, 1903 while petitioner was unmarried, and it was dissolved and liquidated during the marriage by deed of October 7, 1912. For this reason he claims the part of the profits corresponding to the years prior to his marriage.

itance, its acquisition was established beyond any doubt by the deeds of partition; and as to the part accruing from the Santiago Hermanos partnership, by the deed of dissolution of the partnership where reference is made to the articles of partnership. The presumption of § 1307 does not prevail herein because § 1299 excludes it, inasmuch as with respect to the capital and profits of the partnership existing before the mariage, said § 1299 provides in its first paragraph that the separate property of the spouses are those "brought to the marriage as his or her own;" and as to those accruing from inheritances, it provides in its second paragraph that separate property are those "acquired by either of them during the marriage by lucrative title, that is to say, by gift, legacy or descent."

The lower court does not question that this property, by the way in which it was acquired, belongs exclusively to the petitioner. The difficulty lies in requiring him, after thirty years of marriage, to identify among the shares and the personal property existing at the time of the dissolution of the marriage that which had been acquired with the proceeds of the property which he brought to the marriage, and that which he later acquired by descent. This identification is not necessary. To this effect Manresa says in his *Comentarios al Código Civil Español:*

"Section 1396 [equivalent to Section 1299 of the Civil Code, 1930 ed.] does not add any other case of subrogation; but, undoubtedly there are other cases comprised in the spirit, if not in the letter, of the law, such as:

"(*a*) The money paid for credits owned exclusively by one of the spouses.

"(*b*) Sale of the separate property of one of them.

"(*c*) Compensation paid in case of condemnation . . . . . .

"In all these cases, the right or the thing is substituted by its value, price or compensation, *and if it is given to the partnership, the partnership owes to either the husband or the wife, to the member owning the property, the amount paid or its value.*" Vol. 9 (1904 ed.) pages 560–1. (Italics ours.)

There is no doubt that the husband brought the aforesaid separate property. If he later sold some of it, he naturally received its price. As the husband is the representative and the manager of the conjugal partnership we must presume, unless the contrary is proved, that when the husband received the price, he received it in the name of the partnership which he represented.

■ Since in the present case there is sufficient capital to pay in its entirety the separate property of the husband and that of the wife, after paying all the debts of the partnership, we must comply with § 1319 of the Civil Code which provides:

"After the debts, charges, and obligations of the partnership have been paid, the capital of the husband and of the wife shall be liquidated and paid, in so far as the inventoried estate may reach."

In the present case the separate capital of the husband consisted in both real and personal property. . The real property, with the exception of Estate Montería, was reduced to money, corporation shares and mortgage credits. The money as well as the shares and other personal property were thrown into the common mass. Perhaps some of the personal property belonging to the husband was lost and its capital might have suffered losses thereby. But that fact does not preclude the husband, upon the liquidation of the partnership, from receiving in full his separate capital. This is so pursuant to § 1321 of the Civil Code, which reads thus:

"The losses or deterioration which the personal property, belonging to either of the spouses, may have suffered even though by a fortuitous event, *shall be paid out of the conjugal property, should there be any.*

"Those suffered by the real property shall not be payable in any case." (Italics ours.)

In the present case there is no question as to the losses suffered by the real property nor has anyone suggested the

existence of such losses. Illustrating this doctrine Manresa says:

"But whenever there exist profits in the conjugal partnership, the law rightly provides that before dividing the estate, it is only fair to compensate each spouse for the damages or losses which, even through a fortuitous event, his or her capital may have suffered. Suppose the capital of the husband, for example, has suffered considerable losses or deterioration which cause in his capital a loss of 15,000 *pesetas,* while that of the wife has hardly undergone any change or it may have even increased. The profits of the conjugal property amounts to 20,000 *pesetas.* If these are equally divided between both spouses, the wife shall receive her capital, exactly the same or increased, plus 10,000 *pesetas,* while the husband, despite the profits, shall receive less than his capital because the total amount of the profits is not sufficient to complete the amount of his capital. In this event, the statute provides that the 15,000 *pesetas* which the husband lost be credited to him, and the remaining 5,000 *pesetas* be divided between both spouses." (page 708)

See also the decision of the Supreme Court of Spain of April 17, 1943, *Jurisprudencia Civil,* Second Series, Vol. 2, March–April, 1943.

■ Among the property claimed by petitioner as his own we find, as noted, the capital and his share on the profits which pertained to him in the partnership Santiago Hermanos, plus certain credits, which he received as part of the aforesaid inheritances. We shall now consider in the first place his contribution to the marriage derived from the partnership Santiago Hermanos.

This partnership was constituted on July 28, 1903. Petitioner contributed thereto the amount of $1,694.85 as capital. The partnership was liquidated on October 7, 1912 whereupon he received the total amount of $10,469.76 in different properties inventoried in the deed of dissolution. Out of that amount $1,694.85 pertains to the capital brought by him to said partnership and $8,774.91 to the profits accumulated during its nine years of duration, that is, from 1903 until

1912. As to the capital brought by him to the partnership there should be no question inasmuch as it appears from the articles of partnership executed when he was unmarried and could have no interest in simulating a capital which he did not have and to which his partners would have objected. As profit the petitioner does not claim the whole of the $8,774.91 because part of them accrued during the years 1908–1912, for which reason they are conjugal; but he does claim the profits accruing between 1903 and 1908 which are his separate property, because the deed of partnership was executed on July 28, 1903 and he was not married until April 25, 1908. Under these circumstances and it being impossible to make an accurate estimate of the profits had in each period, 1903–1908 and 1908–1912, the petitioner finds them by a simple arithmetical operation. He takes five ninths of the profits accruing during the five years prior to his marriage, as his separate property and four ninths accumulated during the other four years, as conjugal. In this manner he concludes that $4,874.95 belong to him exclusively. Adding it to the capital, that is, $1,694.85, the total amount of the capital plus profit is $6,569.80, which is the sum claimed by him.

The lower court maintains that there is no legal provision authorizing the system employed by petitioner to determine the proportion between the separate and the conjugal property. Indeed, we know of no legal provision which expressly authorizes it. But we have no doubt that if we should deny the amount claimed as profit we would be manifestly and unjustly wronging the petitioner. By adopting such a system he merely applied by analogy the provisions of § 1326 for the liquidation of partnership property of two or more marriages contracted by the same person. This section reads thus:

"Whenever the liquidation of the partnership property of two or more marriages contracted by the same person may have to be made simultaneously in order to determine the funds of each partnership, every kind of proof shall be admitted, in the

absence of inventories, and in case of doubt, the partnership property shall be divided between the different partnerships in proportion to the time of their duration and to the property owned by the respective spouses."

We do not see why that section can not be applied by analogy, taking into account the well-known maxim "Where the same reason exists, there the same law prevails."

Lastly, we shall pass on to consider the credits which petitioner brought to the marriage. It seems clear that if these credits were never collected, they cannot be considered as brought. But petitioner's testimony to the effect that they were all collected was not contradicted and since that testimony can not be arbitrarily disregarded, we should conclude that all the credits inherited by him were brought to the conjugal partnership.

In consonance with the principle laid down in this opinion, petitioner's estate should be liquidated in the following manner:

| | | |
|---|---|---|
| Value of the property | | $506, 079. 26 |
| Less: Charges or debts | $4, 416. 40 | |
| Capital brought by the wife | 54, 398. 05 | |
| Capital brought by the petitioner | 111, 794. 08 | 170, 608. 53 |
| Conjugal | | $335, 470. 73 |
| Conjugal property of the deceased wife | | 167, 735. 36 |
| Plus capital brought by the deceased wife | | 54, 398. 05 |
| Whole amount to be distributed | | $222, 133. 41 |
| Less: Legacies | | 105, 157. 07 |
| Petitioner's Inheritance | | $116, 976. 34 |

The decision appealed from should be annulled and the case remanded to the Tax Court to order the Treasurer to compute the tax to be paid by petitioner on an inheritance amounting to $116,976.34. After duly computed, he shall be ordered to return to the petitioner the proper amount, including the interest to which he might be entitled.